VALIER–MONTANA LAND & WATER CO., Respondent, *v.*
RIES et al., Appellants.

(No. 7,925.)

(Submitted November 15, 1939. Decided January 2, 1940.)

[97 Pac. (2d) 584.]

*Messrs. A. H. Gray, John McKenzie, Sr.,* and *W. E. Arnot,* for Appellants, submitted a brief; *Mr. Gray* argued the cause orally.

*Messrs. Church & Jardine,* for Respondent, submitted a brief; *Mr. Arthur S. Jardine* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

This is an appeal by the defendants John Ries and A. J. Fousek, trustee, from a judgment entered against them in favor of plaintiff, The Valier-Montana Land and Water Company. The appeal comes up without a bill of exceptions and upon the judgment roll only, consisting of the amended and supplemental complaint, the separate amended answer and counterclaim, the reply thereto, and the findings of fact, conclusions of law, and decree.

There are three causes of action, each of which is based upon a contract for the purchase from plaintiff's predecessor of forty shares of the capital stock of Teton County Canal and Reservoir Company, whose name was subsequently changed to Pondera County Canal and Reservoir Company. These causes of action are identical in nature except that each contract was to furnish a water right for a different 40-acre tract, and except that there are variations as to the dates of the contracts and of the breaches thereof, and as to the amounts of the defaults thereunder. These variations in no way affect the issues. We shall, therefore, refer only to the first cause of action in our general statement of facts and issues.

The amended and supplemental complaint recites, in addition to the formal matters, that on March 11, 1910, John Ries entered into a written contract by which he agreed to purchase from plaintiff's predecessor Certificate No. 1294 for forty shares of the capital stock of the Canal and Reservoir Company; that the said stock and the water right represented thereby were made inseparably appurtenant to the N.W. ¼ S.E. ¼ of Section 24, T. 29 N., R. 3 W., M. M.; that the agreed price of the stock was $1,600, payable $120 in cash and the balance in fourteen equal annual installments, each bearing interest at the rate of six per cent. per annum from July 1, 1913, payable annually; that

in the agreement the purchaser covenanted that to secure the payment of the purchase price, interest and charges he thereby set over by way of mortgage or pledge any and all interest in the said lands and water rights which he then had or which might thereafter accrue to him. A copy of the contract, marked Exhibit A, was annexed to and made a part of the complaint. It recited that plaintiff's predecessor constructed the irrigation system under a contract with the Carey Land Act Board of the state, and organized the Canal and Reservoir Company to take over, operate and maintain the system; that the State Board had given notice that the said land was open for settlement and that Ries desired to file upon it; that "the Company hereby sells, and the Purchaser hereby purchases" said stock; that each share of the stock represents a storage and carrying capacity in the reservoir and irrigation system for $1\frac{1}{2}$ acre-feet of water during each irrigating season; that the water right so represented "shall become and be inseparably appurtenant to" the said land; and that Ries "will, and by these presents does, hereby assign, transfer and set over, by way of mortgage or pledge, to the Company, any and all interest in said lands and water rights which he now has, or which may hereafter accrue to him."

It was further alleged that plaintiff's predecessor had completed the irrigation system for the said Canal and Reservoir Company so as to become entitled to the payments from defendant Ries as provided for by the contract; that plaintiff's predecessor conveyed to plaintiff all its right, title and interest in the said contract; that by reason of the premises defendant Ries became obligated to pay to plaintiff on December 1, 1919, under the terms of the contract, the sum of $102 on principal, together with $48.96 interest upon the entire unpaid balance, making a total of $150.96, which then became due and payable, but though often requested had failed to pay the said installment of principal then falling due, except $94.90 thereon, and had defaulted in the payment of $7.10 thereof, and had defaulted in the payment of every installment of principal and interest accruing thereafter, including the last installment, which

became due on December 1, 1926; that by reason thereof, plaintiff elected to proceed to collect the same and to enforce its lien upon the lands, water rights and shares of stock mentioned in the contract; that the said balance was $726.19, with interest from December 1, 1919, less the credits therein set forth; that the defendant Ries had failed to pay the taxes levied against the premises for the years 1923 to 1933, inclusive, and that in order to protect its lien the plaintiff paid the same in amounts and at dates stated; that plaintiff had been in possession of the premises for the seven years immediately preceding the filing of the amended and supplemental complaint, and had received income therefrom during the years 1930, 1934 and 1936, in amounts stated, which it had applied first in payment of the taxes, and second in payment of the interest upon said purchase price; that defendant A. J. Fousek, Trustee, claimed an interest in the said property as a subsequent encumbrancer or purchaser, but that his interest, if any, was in all respects subject, subsequent and subordinate to the lien of plaintiff's contract. Two other defendants, Eva Ries, the wife of defendant John Ries, and Montana Producers Purchasing Company, Inc., were named as claiming interests subordinate to plaintiff's lien, but the latter defendant defaulted and the case was dismissed as to Mrs. Ries, because she had died before the case was tried.

The original complaint was filed on May 14, 1934, and the amended and supplemental complaint on September 27, 1937. The prayer was for the recovery from defendant Ries of the balance of principal and interest, together with the sums advanced for taxes, with interest thereon, less the income credits shown; and for adjudication that the unpaid balance constituted a valid and subsisting lien upon the land with all improvements, and also upon the said Certificate No. 1294 for forty shares of stock; that the land and water stock be sold according to law and the proceeds thereof applied in payment of the lien; that the defendants and all persons claiming under them be barred and foreclosed of all right, title and claim of equity of redemption in the property; and that plaintiff have judg-

ment against defendant Ries for any deficiency remaining after such application of sale proceeds.

The amended answer admitted the allegations of the amended and supplemental complaint, with certain variations in amounts and dates, but placed in issue plaintiff's right to the relief sought. It also alleged as separate defenses that the installment due on December 1, 1919, had been paid in full, and that like installments became due and payable on December 1 of each of the years 1920, 1921, 1922, 1923, 1924, 1925 and 1926, but that each of the said delinquent payments was barred by the provisions of section 9029, Revised Codes, and that the lien originally securing the same had therefore become null, void and *functus officio*. Defendants set up a further defense and counterclaim, in which they recited the facts concerning the contract substantially as set forth in the amended complaint, together with further allegations as follows: That subsequent to the execution of the contract defendant Ries had made entry on the said lands as required by the Carey Land Act, and as required by Chapter 180, section 1966 et seq., Revised Codes, and was in possession of the said land until June 12, 1928; that on that day all his right, title and interest in the lands and appurtenances were sold to defendant A. J. Fousek, Trustee, at sheriff's sale and a sheriff's sale certificate thereupon issued to him; that subsequently, there being no redemption, a sheriff's deed was issued to Fousek on July 11, 1929, and at all times since that date Fousek had been and continued to be the owner of the said land with water rights and appurtenances, and entitled to the possession, rents and profits thereof, having at all said times possessed the qualifications required of an entryman under the said state law; that Fousek never became personally liable under the contract, nor assumed the obligation of defendant Ries thereunder; that subsequent to defendant Fousek's acquisition of right by virtue of sheriff's sale certificate on June 12, 1928, the plaintiff without Fousek's authority received and collected from crops grown on the lands, as the landlord's share thereof, a large sum of money, the exact amount of which was unknown to defendant Fousek, and that no ac-

counting had ever been made thereof; that in the amended and supplemental complaint plaintiff had admitted having received from the proceeds of the land after the payment of irrigation costs the sum of $796 since the issuance to defendant Fousek of the sheriff's deed; that the said sum had never been paid to defendant Fousek, and that the whole thereof with interest was now due, owing and unpaid from plaintiff to defendant Fousek; the prayer was that an accounting be had and that the defendant Fousek receive judgment against plaintiff for the amount found due him on such accounting.

The plaintiff's reply admitted many of the defendants' allegations but placed in issue the various defenses set up; and alleged that the defendant Ries had made numerous payments on the contract, the last of which was made on November 6, 1926, and that all said payments included payments of interest.

As a further reply it was alleged that in the year 1929, and while the premises were abandoned and vacant, plaintiff took possession and was continuing to hold the same to secure the payments due under the contract; that it had received the landlord's share of crops raised on the premises beginning with the year 1930, and had applied the proceeds upon the indebtedness due from defendant Ries and to the payment of taxes and maintenance charges for water to irrigate the lands; that it was necessary to pay the same in order to protect plaintiff's interest in the contract and to obtain water to irrigate the land, without which little or no crop would have been raised, and that it was customary for the landlord to pay water maintenance charges out of his share of the crop.

The action was tried to the court without a jury and thereafter findings of fact, conclusions of law and decree were made. The court found that the contract shown as an exhibit in the complaint was made by defendant Ries and plaintiff's predecessor; that the last payment made by Ries was the sum of $194.30 on November 6, 1926, leaving a balance of $623.55 on principal; that he had failed to make any further payments "except such payments as were made for his account by plaintiff herein while in possession of said premises as hereinafter set

forth;" that defendant Ries remained in possession and harvested the 1928 crops and received the proceeds for his own use and benefit, and in the spring of 1929 he expressly consented to plaintiff's taking and holding possession to protect its lien and to apply the rents and profits upon the indebtedness and upon taxes; that plaintiff then peaceably and legally acquired possession and ever since had held and continued to hold possession thereof; that none of the defendants had ever requested possession thereof, nor objected to plaintiff's holding the same; that plaintiff had received the rents, issues and profits in the years 1930, 1934 and 1936, and had applied them on the indebtedness and on the payment of taxes at dates and in amounts stated; that after so applying the rents and profits there was due and owing from defendant Ries to plaintiff the sum of $574.06, with six per cent. interest from December 1, 1934, and certain stated amounts for taxes paid for which it had not been reimbursed, making a total sum then due and owing plaintiff of $773.90; that payment thereof was secured by valid mortgage lien upon all the right, title and interest of defendant Ries in the land, together with all buildings, structures and improvements thereon, and all water rights, etc., usually had or enjoyed in connection therewith, and particularly the water right represented by Certificate No. 1294 for the water stock in question, made inseparably appurtenant to the land. Like findings were made with reference to the other two causes of action, differing essentially only as to the balances due, which as to the second and third causes of action were $1,417.67 and $2,409.34, respectively, and as to the date of Ries' last payment thereon, which was December 10, 1925. It follows from the express findings that the final installments became payable on December 1, 1926, under the contracts involved in the first and second causes of action, and on December 1, 1930, under that involved in the third.

The conclusions of law were that plaintiff had a valid lien upon all the property described in the complaint prior to the right of any of the defendants and any persons claiming under them, to secure the payment of the aforesaid indebtedness, and that plaintiff was entitled to have all right, title and interest

of the defendants in the said property and water rights sold to satisfy the same, together with costs of suit and expenses of sale. The decree was in accordance therewith.

By the original Carey Act, 28 Stat. 422, enacted August 18, 1894, U. S. C., Title 43, section 641, Congress authorized agreements to donate and patent to a state, under certain conditions and limitations, such arid public lands therein situated as such state should cause to be irrigated and cultivated by actual settlers.

By an amendment of June 11, 1896, 29 Stat. 434, U. S. C., Title 43, section 642, Congress authorized the state to provide for liens against separate legal subdivisions of land reclaimed, for the actual cost and necessary expenses of reclamation and interest thereon, and provided that when an ample supply of water was actually provided for its reclamation the land should be patented to the state without requiring its prior settlement or cultivation.

Chapter 105 of the 1905 Session Laws (now Code sections 1966 to 1991, inclusive) was enacted by the legislature to take advantage of the federal Acts. It provided for a Carey Land Act Board, and authorized it to comply with the federal Acts, to enter into contracts thereunder with the United States, and to make contracts for the reclamation and irrigation of such lands under certain prescribed conditions. It provided also that the water right so furnished should become appurtenant to the land as soon as title passed from the United States to the state, and that the person, company or association providing the irrigation system should have a ''first and prior lien on said water right and land upon which said water is used for all deferred payments for said water rights; said lien to be in all respects prior to any and all other liens created  *  *  *  by the owner or possessor of said lands.'' (Sec. 1983.) It authorized the board to sell the land for not less than 50 cents nor more than $2.50 per acre, and provided the qualifications and conditions required of entrymen, including a partial payment of 25 cents per acre and a certified copy of a contract for a perpetual water right.

It appears that the irrigation system for the lands here involved was completed by plaintiff's predecessor, that the lands were patented to the state by the United States, that the contracts here involved were entered into by defendant Ries to procure a perpetual water supply for the lands, that he made entry of the lands as provided by law, but had not completed payment either for the state lands or for the water rights under the contracts. Defendant Fousek acquired all Ries' right, title and interest in the land and water rights.

It is apparent from the contracts annexed to the amended complaint and mentioned in the findings, that the transactions constituted present purchases and sales of the stock and water rights, that the water right immediately became inseparably appurtenant to the lands mentioned, and that the agreements constituted mortgages as between the parties. It follows from the facts found by the court that by Ries' last payment on the first cause of action within eight years before suit, which was necessarily credited first to interest upon the entire unpaid balance, the statute of limitations was prevented from running against any part of that cause of action; but that his last payments on the second and third causes, made in the preceding year, would not have that effect, and that payments matured and taxes paid more than eight years prior to suit would be barred (1) if the statute were running against them, and (2) unless it were tolled by application of rents in 1930. However, for the reasons hereinafter stated, it will be impossible for us to decide whether any of such installments or taxes are barred.

Appellants' eleven specifications of error are that the court erred "in finding that plaintiff was entitled to judgment" for the amounts named, and "in failing to find" that installments maturing more than eight years prior to suit were barred by section 9029, Revised Codes (specifications Nos. 1, 2 and 3); "in finding and decreeing that plaintiff was entitled to judgment" for those amounts, or for any amount in excess of the taxes paid and installments maturing within eight years before suit, with interest (No. 4); "in finding" annual payments

maturing more than eight years prior to suit not barred under section 9029 (No. 5); "in finding" that plaintiff peaceably and legally acquired possession of the land in 1929 and was thereafter entitled to the rents and profits (No. 6); "in failing to find that Fousek was entitled to the rents and profits from said lands subsequent to execution and delivery of sheriff's certificate to him in June, 1928, and to judgment therefor" (No. 7); "in applying" rents belonging to Fousek upon, and "attempting thereby to toll the statute of limitations on" Ries' obligations (No. 8); "in denying defendant Fousek judgment against plaintiff and an accounting for rents and profits that came from said land subsequent to June, 1928" (No. 9); "in permitting the plaintiff to apply" the said payments on Ries' obligation, and "in denying Fousek's right to say how said fund should be applied, if at all" (No. 10); and "in failing and refusing to apply" such payments, if at all, as desired or directed by Fousek in accordance with section 7430, Revised Codes (No. 11).

While seven of these eleven specifications of error recite that the court "erred in finding" or "in failing to find" in certain respects, none of the specifications raise any question of fact, except possibly the sixth. In essence they all challenge, not the court's finding or failing to find certain facts, but its failure to make conclusions of law and to enter its decree to the effect (1) that all taxes paid by plaintiff and all installments delinquent more than eight years prior to institution of suit were barred by section 9029, Revised Codes; (2) that Fousek was entitled to the rents and profits accruing after his receipt of the sheriff's sale certificate; (3) that Fousek was entitled under section 7430, Revised Codes, to say how and upon which of the delinquent annual payments, or the interest thereon, the rents and profits should be applied. Appellants state these as the three questions to be determined by the court, and they are all questions of law and not of fact.

The court's only reference to Fousek in the findings was that "the interest of * * * A. J. Fousek, Trustee, * * * is in all respects subject, subsequent and subordinate to the lien

of plaintiff thereon.'' Appellants attack that part of the findings. They contend that Fousek's acquisition of Ries' interest, and the manner and time of that acquisition, were not in controversy, having been admitted in the pleadings; that the trial court had no power to make a finding contrary thereto; that the finding to the effect that Fousek's interest was subordinate to plaintiff's lien was contrary thereto and was therefore void.

It would seem that the finding in question is a conclusion of law rather than a statement of fact; but in any event it is not inconsistent with the facts pleaded as to Fousek's acquisition of interest. The most he could have done was to succeed to Ries' full rights under the contract; and since Ries' rights were subject to plaintiff's lien, the same is true of Fousek's rights, unless both were made superior thereto by reason of the bar of a statute of limitations, or for some other reason equally applicable to either Ries or Fousek. The holding complained of is, not that Fousek was liable for plaintiff's claim, but that his interest was subject to plaintiff's lien. Certainly there is nothing in the findings to indicate that in some way Fousek acquired Ries' contract rights free from the lien imposed by the contract. The court's pronouncement of the inferiority of Fousek's interest to plaintiff's lien, whether considered as a finding of fact or a conclusion of law, is not objectionable as being contrary to the agreed facts relative to his acquisition of title from Ries.

As stated above, there is no reference to Fousek in the findings except the statement that his rights were subject to plaintiff's lien. There is thus no finding upon which to base any conclusion that Fousek was entitled to possession, or to the rents and profits, or that he was entitled to prescribe how they should be applied by plaintiff. The defect of such finding cannot be considered by this court in the absence of a showing of exceptions thereto as required by sections 9369 and 9370. Being unable to consider such defects, we must imply any finding not specifically made, but necessary to support the judgment,

unless such finding is inconsistent with those expressly found. (*Crosby* v. *Robbins,* 56 Mont. 179, 182 Pac. 122.).

And in the absence of the evidence from the record we are ■ precluded from inquiring whether it was sufficient to sustain the findings, whether express or implied, for under section 9191, Revised Codes, error or prejudice will not be presumed. (*Lindeberg* v. *Howe,* 67 Mont. 195, 215 Pac. 230.) This is true even if the evidence necessary to sustain them might have been excluded as not warranted by the pleadings (*Fabian* v. *Collins,* 3 Mont. 215, 33 Pacific States Rep. 215; *Alderson* v. *Marshall,* 7 Mont. 288, 16 Pac. 576; *Post* v. *Liberty,* 45 Mont. 1, 121 Pac. 475; *Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071; *Ellinghouse* v. *Ajax Livestock Co.,* 51 Mont. 275, 152 Pac. 481, L. R. A. 1916D, 836; *Galland* v. *Galland,* 70 Mont. 513, 226 Pac. 511; *Nuhn* v. *Nuhn,* 97 Mont. 596, 37 Pac. (2d) 571), or might relate to an issue or theory not pleaded (*Capital Lumber Co.* v. *Barth,* 33 Mont. 94, 81 Pac. 994; *Lackman* v. *Simpson,* 46 Mont. 518, 129 Pac. 325; *State ex rel. Dansie* v. *Nolan,* 58 Mont. 167, 191 Pac. 150; *First Nat. Bank* v. *Robke,* 72 Mont. 527, 235 Pac. 327; *LaBonte* v. *Mutual Fire & Lightning Ins. Co.,* 75 Mont. 1, 241 Pac. 631; *Harrington* v. *Deloraine Brewing Co.,* 99 Mont. 78, 43 Pac. (2d) 660), or might even be contrary to express allegations or admissions in the pleadings (*Kelly* v. *Gullickson,* 75 Mont. 66, 241 Pac. 623; *Baker* v. *Union Assur. Soc.,* 81 Mont. 281, 264 Pac. 132), since in any event such evidence may have been admitted without objection and may thus have amended the pleadings.

All three questions are therefore removed from our consideration, since they are all based upon the suppositions (not necessarily shown by the evidence nor found by the court) that in 1928 or 1929 Fousek became entitled to possession and that plaintiff's possession and its receipt and application of rentals in 1930, 1934 and 1936 were wrongful and therefore ineffectual to toll the running of the statute of limitations as to installments maturing and taxes paid more than eight years prior to suit.

In view of this situation there is no need for us to comment upon the question of Fousek's claimed right to the possession

of the premises and water rights under the contract without an offer to do equity by performing its terms, nor upon the question of the effect of his failure to demand possession or to claim the 1930 and 1934 rentals until the filing of his amended answer in 1938.

The decree is affirmed.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN, ERICKSON and ARNOLD concur.